IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.  Case Nos.:   4:10cr61/RH/CAS
4:12cv253/RH/CAS

JAMES SANTOS

---

**REPORT AND RECOMMENDATION**

This matter is before the court upon Defendant's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 72) and the Government's response in opposition thereto (doc. 75).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

**PROCEDURAL BACKGROUND**

On July 7, 2010, a federal grand jury charged Defendant with a single count of mailing, on or about May 20, 2010, a written communication to then Florida Governor Charlie Crist, threatening to kill the Governor if he did not release a certain prisoner in violation of Title 18 U.S.C. § 876(b) (doc. 1).  Defendant was initially represented by

Federal Public Defender Randolph Durrell, but the case was assigned on September 21, 2010, to Clyde M. Taylor, Jr., due to a potential conflict of interest (docs. 10, 15, 17, 18, 19, 21).

Defendant pleaded guilty pursuant to a written plea agreement and statement of undisputed facts (docs. 34, 35).  There was no agreement between the parties with respect to cooperation (doc. 36).  The statement of facts stated that on May 7, 2010, Defendant sent written correspondence to the Tampa office of the Federal Bureau of Investigation ("FBI") in which he claimed to be the head of the "Almighty Vice Lord Nation" and threatened that then Florida Governor Charlie Crist and Fulton County Georgia District Attorney Paul Howard would be killed if two "political prisoners," Imam Jamil Abdullah Alim (or Al-Amim) and Diego Montoya, were not released (doc. 34).  Defendant claimed that Al-Amim was serving a life sentence for the homicide of an Atlanta Police officer that Defendant had committed and that District Attorney Howard knew of this.  He described Montoya as "near and dear" to the Almighty Vice Lord Nation.  Defendant stated in his letter that a team of Lords was at the capitol in Tallahassee and "on my word and order Governor Charlie Crist will be killed" (*id*. at 1–2).  Defendant was interviewed by state law enforcement officials and reiterated his desire and ability to have the two men assassinated if his demands were not met.  On or about May 20, 2010, then-Governor Crist's office received a similar threatening letter in which Defendant identified himself by name, acknowledged sending the first letter to the FBI, and repeated his threat to kill the governor if Diego Montoya was not released from prison.  Defendant was interviewed by law enforcement with respect to this letter

and, after being read his Miranda warnings admitted that he wrote and sent the letter to Governor Crist (doc. 34 at 1–3).

The plea proceeding was brief and unremarkable. Defendant admitted that he had threatened Governor Crist with harm if Al-Amim were not released from jail and he did not dispute anything contained within the statement of facts (doc. 60 at 8–9). After the court advised Defendant of the rights he was giving up by pleading guilty and the impossibility of accurately predicting the sentence Defendant would receive, Defendant specifically denied, twice, that anyone had made any promises to him about the sentence that would be imposed in his case (*id.* at 12–13). The court accepted his guilty plea (*id.* at 15).

The initial Presentence Investigation Report ("PSR"), which was disclosed to the defense on February 24, 2011, calculated a Total Offense Level of 29 and a Criminal History Category of VI with a corresponding advisory guidelines range at 151 to 188 months imprisonment (doc. 38). The defense filed two objections, referencing a possible argument as to whether the threats made by Defendant were "real" (doc. 41, PSR ¶ 78). The final PSR, filed on March 24, 2011, noted the objections but made no change to the guideline range (*id.*).

At sentencing, the defense acknowledged that there was no legal basis for the objections it had investigated, but urged the court to impose either a below guidelines sentence, or a low guidelines sentence to run concurrently with the state sentence Defendant was then serving (doc. 61 at 3–6). The court acknowledged that an individual who had committed the same offense with a minimal criminal history would

have been facing a 33 to 41 month term of imprisonment (*id.* at 11). However, it found that due to the serious nature of the offense and Defendant's criminal history, a sentence at the low end of the applicable guidelines range was appropriate (*id.* at 11–12).

Defendant appealed, and counsel filed an <u>Anders</u> brief. While the appeal was pending, Defendant filed a letter motion asking that his sentence be reduced, which the court denied (docs. 66, 67), and an unsigned motion for post-conviction relief on a form intended for filing in state court (doc. 68). The Eleventh Circuit's independent review of the record revealed no arguable issues of merit, and it affirmed Defendant's conviction and sentence (doc. 69). This court directed Defendant to file his § 2255 motion on the proper court form, and it is his amended motion that is currently pending before the court (doc. 72).

Defendant raises four grounds for relief in his motion. The Government opposes the motion in its entirety, arguing that Defendant's claims are procedurally barred and without merit.

## LEGAL ANALYSIS

<u>General Legal Standard of Review</u>

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral

attack. See 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not

actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055). Defendant could have raised, at a minimum, his first three grounds for relief on appeal. His failure to do so results in a procedural bar.

Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See* Nyhuis, 211 F.3d at 1344. Although Defendant does not expressly couch his claims as allegations of ineffective assistance of counsel, the court will liberally construe his otherwise barred allegations as encompassing this assertion.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503

(2003); *see also* United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  Strickland's two part test also applies to guilty pleas.  Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)).  A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial.  *Id* at 1384–85 (quoting Hill, 474 U.S. at 59).  A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.  Pericles v. United States, 567 F. App'x 776, 2014 WL 2198514 at *5 (11th Cir. 2014) (quoting Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991)). if a defendant fails to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at

689); see also Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing

errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. See Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.

Ground One

Defendant first claims that the Government never proved that District Attorney Howard received a letter from him.  The Government was not required to prove that Howard received a letter, and the fact that Defendant made the threat is well established by the record.  To the extent Defendant believes that the court's statements

at sentencing regarding a threat to a prosecutor were improper absent the production of his actual letter to District Attorney Howard, he is mistaken.

Defendant agreed during his rearraignment that everything in the written statement of facts was true (docs. 34, 60 at 8–9). The May 7, 2010, letter that Defendant sent to the FBI contains threats against both Governor Crist and District Attorney Howard (doc. 34). A footnote to the written statement of facts indicates that in addition to the letters Defendant sent to the FBI and to Governor Crist, he also sent a letter to District Attorney Howard (doc. 34 at 1, n.1). This fact is corroborated by the transcript of an FDLE interview with Defendant on June 29, 2010 (doc. 75, exh. 2 at 2–3). During an interview on May 10, 2010, Defendant claimed to be waiting to hear back, via mail, from his people about whether Howard had agreed to re-open Al-Amin's case or whether they had shot him (doc. 75, exh. 1 at 4–5, 7)

Furthermore, neither the existence of a letter to Howard nor threats against him were the basis for the charges in the indictment. The PSR identified Governor Crist as the victim (doc. 41, PSR ¶¶ 11, 17). Ultimately, however, it was the application of the career criminal enhancement that determined Defendant's guidelines range and sentence, not the victim enhancement (PSR ¶¶ 32, 59).

There was no error in the alleged failure of proof that had any impact on Defendant's case. Defendant's attorney was not constitutionally ineffective under Strickland, and Defendant is not entitled to relief.

Ground Two

Defendant claims that he told counsel that he was not the individual convicted in the Las Vegas, Nevada battery case that was used to enhance his sentence, but that counsel told him that he had no money for an investigator. Defendant offers nothing in support of his conclusory assertion, and there is record evidence tending to suggest that it is false.

The case of which Defendant complains is described in paragraph 31 of the PSR (doc. 41). The offense conduct took place in October of 1997, Defendant pleaded guilty on December 30, 1997, and he was sentenced in February of 2008 to a term of 12 to 54 months imprisonment (*id.*). Defendant has never previously denied this conviction whether in response to the PSR, to the district court at sentencing, or on appeal after given the opportunity to present argument after counsel filed his Anders brief. Additionally, contrary to Defendant's assertion, counsel did look into his criminal history. Counsel noted in his Anders brief that "[u]nfortunately for Appellant the record of his prior convictions was complete and accurate, both as to the Nevada conviction (which ironically was pled down) . . . Undersigned counsel could find no flaws in either the case reports and/or for that matter other criminal history of the Appellant." (Doc. 72-2 at 16). The court also notes that during his May 10, 2010, interview with law enforcement, Defendant mentioned that he had a battery case in Nevada in 1998 (doc. 75, exh. 1 at 6–7). Finally, the Government states that correspondence from counsel to Defendant which is contained in the record on appeal reflects that Defendant admitted the two

convictions that were used to enhance his sentence to counsel (*see* doc. 75 at 17).[1] Defendant's belated and unsupported assertion that he was not the individual convicted on the 1998 Nevada battery charge listed in the PSR does not establish that counsel was constitutionally ineffective or that he is entitled to relief.

Ground Three

In Defendant's third ground for relief he complains that counsel told him that he would receive a sentence from 93 to 98 months, and that he never would have entered a guilty plea had he know that he would receive a 151 month sentence. Defendant's assertion that he pleaded guilty with the expectation of receiving a particular sentence is squarely refuted by the record.

During the change of plea colloquy, the court specifically advised Defendant that despite his attorney's extensive experience, counsel did not necessarily know what the guidelines range would be in his case. The court went on to inform Defendant that if any estimate given by counsel was incorrect, this would not provide a basis for Defendant to withdraw his guilty plea. Finally, the court asked Defendant, not once, but twice, whether anyone had made any promises to him about the sentence that would be imposed in his case. Each time Defendant responded in the negative (doc. 60 at 10–13).

---

[1] The Government cites, without attaching a copy of, counsel's October 12, 2011 response to the Eleventh Circuit after Defendant filed a motion to relieve him as court-appointed counsel in ECCA case no.: 11-11765. The court has confirmed the content of the correspondence, but in the future, the Government shall attach copies of documents upon which it relies that are not part of the electronic record in this case.

A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings. Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). Solemn declarations made under oath in open court carry a strong presumption of verity. *Id.*; Connolly v. United States, 568 F. App'x 770 (11th Cir. 2014) (citing Blackledge); Garces v. U.S. Att'y Gen., 611 F.3d 1337, 1349 (11th Cir. 2010); United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994) (citing United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987)). They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice. Blackledge, 431 U.S. at 73–74; United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) ("[T]he presumption of truthfulness of [defendant's] Rule 11 statements will not be overcome unless the allegations in the § 2255 motion . . . include credible, valid reasons why a departure from those earlier contradictory statements is now justified."); *see also* Gonzalez-Mercado, 808 F.2d at 800 n.8 (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing Blackledge and other cases).

Defendant has not established a factual or legal basis to disregard the statements made under oath at the rearraignment proceeding. Furthermore, in addition to Defendant's sworn declarations, counsel also assured the court that there were no agreements or understandings with the Government other than as set out in the plea agreement and supplement. Therefore, Defendant is not entitled to relief on this claim.

### Ground Four

In Defendant's fourth ground for relief he claims that counsel told him that if he would cooperate with respect to a murder investigation that his sentence would be reduced. Defendant asserts that counsel told him that if he helped with this case that he could "end his state time and go right to federal prison," but this never happened and "no one seems to know about" the agreement.

Defendant's assertion that there were undisclosed promises or that he agreed to cooperate are conclusively rebutted by the record. The supplement to the plea agreement reflects that there was no written cooperation agreement with the Government (doc. 46). Furthermore, during his rearraignment Defendant stated under oath that he did not have any agreements with the Government that were not included in the plea agreement or supplement and that no one made many any promises to him about his sentence (doc. 60 at 12–13). Counsel confirmed this (*id*. at 14). Finally, a letter from counsel that Defendant attached to his own motion also indicates that Defendant was not cooperating with law enforcement (doc. 72 at 9). Defendant has shown no factual or legal basis to disregard these sworn statements and he is not entitled to relief.

### Conclusion

For all of the foregoing reasons, the court finds that Defendant has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has he shown that an evidentiary hearing is warranted. Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (doc. 72) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 19th day of September, 2014.

        /s/ Charles A. Stampelos
        **CHARLES A. STAMPELOS**
        **UNITED STATES MAGISTRATE JUDGE**

Case Nos.: 4:08cr49/RH/CAS; 4:11cv589/RH/CAS

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).